[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on April 15, 1979 in Stamford, Connecticut. The plaintiff has resided continuously in this state since that time. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. CT Page 3210 Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the statutory criteria set forth in 46b-81 and 46b-82 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
The parties were married in April 1979 and separated in January 1990. The court notes that prior to their marriage in 1979, the parties had lived together since May 1970. The plaintiff held herself out as Mrs. Zilli during that time and had a checking account in the name of Natalie Zilli. The parties have been married for approximately 13 years.
The plaintiff is aged 63. In 1984 she had a mastectomy as a result of cancer. The plaintiff's present health condition is fair taking into account her other ailments. The plaintiff is not employed and has not been employed during this thirteen year marriage. She has not been employed outside the home in over 25 years. Throughout the marriage the plaintiff remained at home and assumed the traditional role of a homemaker, caring for her husband and her home. This is the plaintiff's second marriage and the defendant's third marriage.
The defendant is aged 66 years of age. He has had health problems including prostate cancer, a bleeding ulcer and a stroke in 1989. He is not in good health, although his personal physician indicated that everything was under control. The defendant's financial affidavit indicates he has no income from employment and is awaiting social security benefits. In fact, the defendant's secretary/bookkeeper testified the defendant had drawn his monthly income for January 1992 and is listed on the payroll records as an account payable for February and March 1992.
At the time of the marriage, the plaintiff had a stock portfolio of approximately $100,000. The defendant at the time of the marriage owned the marital home located on June Road, Stamford. In 1986, the marital home was placed in both names. The defendant has listed the property for sale at $1,195,000 although his appraiser indicated a fair market value of $810,000.
The plaintiff's appraiser indicated the property has a fair market value of $875,000 as of January 3, 1992. There is a mortgage of $300,000 on this property.
In 1988 the parties purchased a home in Madison, Connecticut. The parties planned to summer in Madison and winter in Florida. The property in Madison has been sold and the net proceeds of this sale in the amount of $450,000 are being held in escrow by counsel. The parties also own a home and lot in Florida, purchased in 1988. The defendant spends substantial time in the Florida home and CT Page 3211 indicates it has a value of $170,000. It is encumbered by a mortgage of $65,000. The plaintiff values the Florida home at $190,000.
The defendant has an extensive gun collection which was not listed on his affidavit. The defendant testified the gun collection was worth $6,000 — although on a bank loan application the defendant listed the value as $60,000. Plaintiff's Exhibit #28 shows a portion of the gun collection which includes approximately 28 smaller pistols/guns and approximately 26 rifles.
At the time of the marriage in 1979, the defendant was earning approximately $65,000 per year. In 1980 the defendant went to work for the Aga Khan and earned approximately $150,000 per year.
The court finds that the defendant has a cash flow income of $150,000 per year since 1986.
The court finds the defendant was not credible in many aspects of his testimony. The defendant testified he might sign a fraudulent bank application to obtain a loan and was devious in Mr. Rossi send him a self-serving communication dated October 29, 1991, plaintiff's Exhibit #24. The defendant was able to receive a cash flow income of $150,000 per year, however he now claims $100,000 of this amount was a loan from the company which he has to repay. If it were a loan, the defendant was receiving $100,000 per year, tax free. These so-called loans may very well be charged off as a bad uncollectible debt (Plaintiff's Exhibit #24). The court finds that the letter written by Mr. Rossi (Exhibit #23) is an accommodation written on behalf of and for the benefit of a valued employee. Whether the amount was charged as compensation or as a bad uncollectible debt, would apparently not affect Mr. Rossi's company (Plaintiff's Exhibit #24). The income tax returns filed by the defendant do not indicate this amount as a loan nor do the defendant's pay checks indicate a portion of his compensation was a loan.
The court has weighed and interpreted the evidence presented and has passed upon the credibility of the parties. The court finds the plaintiff to be the more credible of the parties.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of their relationship.
The court has carefully considered the statutory criteria set forth in 46b-81 and 46b-82 C.G.S.A. in reaching the decisions reflected in the orders that follow.
A. Property Settlement CT Page 3212
1. The defendant shall forthwith transfer to the plaintiff a lump sum of Three Hundred and Fifty Thousand ($350,000) from the net proceeds of the Madison real estate sale. The remaining proceeds being held in escrow, shall be the sole property of the defendant.
2. The plaintiff shall forthwith transfer all her right title and interest in and to the real property located at 151 June Road, Stamford, Connecticut to the defendant. The defendant shall be solely responsible for the encumbrances including mortgage and taxes on said property and shall hold the plaintiff harmless with respect to the same. The defendant shall pay to the plaintiff the sum of One Hundred Thousand Dollars ($100,000) when this property is sold or one year from the date hereof whichever event shall first occur. Said payment shall be secured by a second mortgage on the June Road property in the amount of One Hundred Thousand ($100,000) Dollars. In the event the said payment is not made when duel, the plaintiff shall be entitled to interest at the rate of 6% per annum on the unpaid balance. The defendant shall maintain the home owner's insurance on said property and shall provide proof of coverage until the property is sold or until the lump sum amount of One Hundred Thousand ($100,000) Dollars is paid to the plaintiff, whichever first occurs.
B. Florida Real Estate
1. The plaintiff shall forthwith transfer all her right, title and interest in and to the real property known as 2816 Via Paloma Drive, Punta Gorda, Florida, to the defendant. The defendant shall be solely responsible for all encumbrances on said property and shall indemnify and hold the plaintiff harmless therefrom.
2. The defendant shall forthwith transfer to the plaintiff all his right, title and interest in and to the lot located at Colony Point Drive, Punta Gorda, Florida free and clear of any liens and encumbrances.
C. Alimony
1. The defendant shall pay to the plaintiff as alimony the sum of $1.00 per year until his death, the death of the plaintiff or her remarriage.
D. Personal Property
1. Miscellaneous
1. The plaintiff shall be entitled to the personal property CT Page 3213 presently in her possession including her bank accounts her IRA and her jewelry.
2. The defendant shall be entitled to his gun collection, coin collection, his boat, IRA, bank accounts and his interest in Canaan Meadow Corporation.
II. Motor Vehicles
1. The plaintiff shall be entitled to the 1987 Acura motor vehicle and the 1989 Isuzu truck. The defendant shall transfer to the plaintiff, the title to both motor vehicles forthwith.
2. The 1984 Nissan motor vehicle and the 1986 BMW motor vehicle shall be the sole property of the defendant. The plaintiff shall transfer to the defendant, the title to the Nissan motor vehicle forthwith.
III. Household Furniture and Furnishings
The parties have homes in Stamford, Connecticut and in Florida which are fully furnished. The Stamford real estate is on the market for sale and the defendant presently spends a substantial amount of time in Florida. The defendant testified he considers Florida to be his home. The following orders shall enter:
1. The defendant shall be entitled to the furniture and furnishings contained in the Florida home.
2. The plaintiff shall be entitled to the items contained in the Stamford residence as listed on Schedule A attached to her claims for relief. The defendant shall be entitled to the remaining items in the Stamford home.
3. The parties were unable to resolve the division of their personal property although encouraged to do so by the court. The plaintiff's list is a partial list of the furnishings in the Stamford home and leaves the defendant with substantial furniture and furnishings in Stamford to accommodate his periodic visits to Stamford and gives the defendant all of the Florida furniture and furnishings.
4. The plaintiff shall remove the personal property at a time to be agreed upon by the parties, with the assistance of counsel.
E. Health Insurance
1. The defendant shall maintain the plaintiff on his presently existing health insurance for so long as permitted under CT Page 3214 the policy. The plaintiff shall be responsible for any expense or cost in connection with said coverage.
2. The defendant shall reimburse the plaintiff the sum of $500 representing medical expenses incurred by the plaintiff for Gay Larned.
F. Counsel Fees
The defendant shall pay to the plaintiff as a contribution towards her counsel fees (both in Connecticut and Florida), the sum of Ten Thousand Dollars ($10,000).
G. Pendente Lite Orders
1. The pendente lite order of alimony of $450 per week shall remain in effect until the lump sum amount of Three Hundred and Fifty Thousand Dollars ($350,000) has been paid to the plaintiff.
2. The court finds that as of April 2, 1992 there is an arrears of $900 on the pendente lite order which shall be paid to the plaintiff on or before April 24, 1992.
H. Income Tax Returns
The defendant shall indemnify and hold the plaintiff harmless with respect to all previously filed joint income tax returns — federal and/or state.
COPPETO, JUDGE